IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHARLES EUGENE MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO. 1:19-599-CG-N |
| | ) | |
| CLEO TOLLIVER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Charles Eugene Moore, an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action has been referred to the undersigned for appropriate action pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(R). This matter is before the Court on Defendants' motion for summary judgment.[1] (Doc. 42). For the reasons discussed herein, it is recommended that this motion be GRANTED.

## I.    BACKGROUND AND FACTUAL ALLEGATIONS[2]

Plaintiff Moore is suing Lieutenant Cleo Tolliver and Warden Kenneth Peters for alleged due process violation(s) that occurred while imprisoned at Fountain Correctional Facility. In his complaint, Moore claims that on or around August 2, 2017, Lieutenant Tolliver violated the procedural requirements of Administrative Regulation 403 when he provided incorrect inmate

---

[1]    The Court converted the Defendants' Answer and Supplemental Special Report to a motion for summary judgment. (Docs. 32, 41).

[2]    The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." *Priester v. City of Riveria Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000).

identification information in the disciplinary report, thereby denying Moore of due process.  (Doc. 1 at 4).

The Disciplinary Report at issue reveals that on July 27, 2017, Moore (AIS# 297332) was charged with unauthorized possession of a weapon or device that could be used as a weapon by Officer James Foster.  (Doc. 19 at 3).  The Disciplinary Report states:

> On July 27, 2017, Officer Foster observed you, inmate Charles Moore, B/M 297332, with a weapon in inmate Moore's right hand in I-Dorm alleyway.  Inmate Moore was attempting to do bodily harm to inmate Gary Robert, B/M 297332.

(Doc. 19 at 3).  That same day, Officer Booth served Moore with a copy of the Disciplinary Report and listed three witnesses he desired to call at the hearing.  (*Id*.).  At the August 4, 2017 hearing, the arresting officer testified:

> On July 27, 2017 I, Officer Foster observed inmate Charles Moore, B/M 297332, with a weapon in his right hand in I-Dorm alleyway.  Inmate Moore was attempting to do bodily harm to another inmate.

(Doc. 19 at 4).  Moore also testified, stating:

> Line 1 through 4 is not right, I plea not guilty.

(*Id*.).  The three listed inmate witnesses for Moore refused to attend the disciplinary hearing and in signed statements, denied knowledge of the incident.  (*Id*. at 5, 7-10).  The hearing officer, Cleo Tolliver, found Moore guilty of the charge based on the testimony of the arresting officer and recommended: (1) loss of canteen privileges for 45 days; (2) loss of telephone privileges for 45 days; (3) loss of visiting privileges for 45 days; (4) disciplinary segregation for 45 days; (5) custody review; and (6) loss of 3 months good time credit.  (*Id*. at 5).  Warden Peters reviewed and approved the hearing findings on August 8, 2017.  (*Id*)  Moore was then served a copy of the Disciplinary Report containing the hearing findings and sanctions.  (*Id*. at 6).

Moore now seeks, amongst other relief, damages in the amount of $300,000 for an alleged due process violation – that is the procedural error of having the same AIS numbers listed for Moore and the inmate victim, denying him proper notice.  (Doc. 1 at 4, 7).

Defendants Tolliver and Peters have responded to the complaint and denied the allegations asserted against them.  (*See* Docs. 32, 41).  Defendants contend that Moore was provided due process regarding the disciplinary charges and action taken against him. (Doc. 41 at 3-5).  Defendants have also produced the affidavits of Lieutenant Tolliver and Warden Peters in support of their position.  (*See* Docs. 41-1; 41-2).

> Defendant Tolliver affirms, "I have read the complaint in the above referenced case.  I make the following statement:  On the said date of this hearing, all disciplinary requirements were met and all procedures were followed.  End of Statement." (Doc. 41-1).

> Defendant Peters, now the warden at Donaldson Correctional Facility, affirms that "[o]n July 27, 2017, Officer James Foster observed inmate Moore in possession of a knife-type weapon in the I Dorm hallway, attempting to stab inmate Robert Gary #297332, which led to inmate Moore being written a disciplinary.  Correctional Lieutenant Cleo Tolliver held the disciplinary court and determined that inmate Moore was guilty based on the testimony given.  I reviewed the disciplinary and determined that no procedures had been violated and approved the hearing. I have no other knowledge of inmate Moore's allegations." (Doc. 41-2).

The Court converted Defendants' Answer and Supplemental Special Report to a motion for summary judgment (doc. 42), to which Moore has responded, reiterating the incorrect information on the disciplinary report in violation of Alabama Department of Corrections Administrative Regulation 403 (requiring the Disciplinary Report Form 403-A to be completed through line 4 before an inmate is charged) and restating the violation of his due process rights. (Doc. 43, 45).

After a thorough review of the claims asserted and the record before the Court, it is determined that this motion for summary judgment is ripe for consideration.

## II.   MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.") (emphasis in original); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'") (emphasis in original) (citation omitted).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing or pointing out to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id*. at 322-24.

> Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor.

*ThyssenKrupp Steel USA, LLC v. United Forming, Inc*., 926 F. Supp. 2d 1286, 1290 (S.D. Ala. 2013) (internal citations omitted).

The requirement to view the facts in favor of the nonmoving party extends only to "genuine" disputes over material facts. *Garczynski*, 573 F.3d at 1165. "A genuine dispute requires more than 'some metaphysical doubt as to material facts.'" Id. (citations omitted). A "mere scintilla" of evidence is insufficient; the nonmoving party must produce substantial evidence in order to defeat a motion for summary judgment. *Id*. In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599 (11th Cir. 1995). More importantly, where "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007); *see also Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011) ("In cases where opposing parties tell different versions of the same events, one of which is blatantly contradicted by the record—such that no reasonable jury could believe it—a court should not adopt the contradicted allegations.").

## III.    DISCUSSION AND ANALYSIS

### A.    ELEVENTH AMENDMENT IMMUNITY.

To the extent Plaintiff attempts to sue Defendants in their official capacities (as Alabama Department of Corrections officials) and seeks any type of monetary award, the defendants are entitled to absolute immunity from suit, as official capacity lawsuits are "in all respects other than

name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985).

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S. Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S. Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities.

*Id*., quoting in large measure *Lancaster v. Monroe Cnty*, 116 F.3d 1419, 1429 (11th Cir. 1997). Accordingly, Defendants, both employed by the State of Alabama, are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429.

## B.    QUALIFIED IMMUNITY.

Defendants contend that they are entitled to qualified immunity because Plaintiff cannot show a constitutional violation. (Doc. 32). "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Marbury v. Warden,* 936 F3d 1227, 1232 (11th Cir. 2019) (citation omitted). Since there is no dispute that the defendants in this action were acting within their discretionary authority at all times when the acts in question occurred, the burden shifts to Plaintiff to show that Defendants violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Id*. Therefore, the Court will now address whether this action identifies any constitutional violation.

C.    **Due Process Claim.**[3]

To state a § 1983 claim against Defendants, Moore must show a violation of his rights

under the Constitution or laws of the United States by a person acting under color of state law.

*Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). Defendants, by virtue of their

employment with the Alabama Department of Corrections, act under color of state law; therefore,

the first element is satisfied. The second element requires Moore to demonstrate that a Defendant

violated his constitutional or federal rights. Here, Moore alleges his right to due process under the

Fourteenth Amendment was violated by Defendants' when they found him guilty of Unauthorized

Possession of a Weapon, based on a Disciplinary Report which contained the incorrect AIS number

of the alleged victim.[4]

The Fourteenth Amendment's Due Process Clause protects against deprivations of "life,

liberty, or property without due process of law." U.S. CONST. AMEND XIV. In the context of

---

[3]    In his complaint, Moore asserts the conclusory allegations of corruption, wrongful act,
negligence, unfair discrimination, and false disciplinary action against Defendants Tolliver
and Peters (doc. 1 at 5) but fails to provide any facts related to these claims or state any cause of action
upon which relief can be granted. Insomuch as these claims appear to stem directly from the
alleged due process violation of which Moore complains of in the complaint and lack any other
factual details, this report will focus squarely on the due process claim, and it is recommended that
the remaining, unsupported allegations should be dismissed from this action. *See, e.g., Fullman v.
Graddick,* 739 F.2d 553, 556–57 (11th Cir.1984) (vague and conclusory allegations are subject to
dismissal).

[4]    In his complaint and subsequent pleadings, Moore alleges administrative regulations that
were violated or not followed by Defendants, in particular Alabama Department of Corrections
Administrative Regulation 403. (Doc. 1 at 9; Doc. 43 at 1-3). It is well settled in the Eleventh
Circuit, infringements of agency rules, regulations or procedures do not, without more, amount to
constitutional violations. *Magluta v. Samples*, 375 F.3d 1269, 1279 n.7 (11th Cir. 2004) (noting
that the mere fact a governmental agency's regulations or procedures may have been violated does
not, standing alone, raise a constitutional issue); *United States v. Caceres*, 440 U.S. 741, 751-52,
99 S.Ct. 1465, 59 L.Ed. 2d 733 (1979) (holding that mere violations of agency regulations do not
raise constitutional questions). Accordingly, Moore's claims that Defendants failed to follow the
Alabama Department of Corrections Administrative Regulations in completing his disciplinary
report are not actionable pursuant to § 1983.

Moore's complaint, the concern is to Moore's liberty interest.  The Supreme Court has identified

two circumstances in which a prisoner, who is already deprived of his liberty in the ordinary sense,

can be further deprived of his liberty so that due process is required.  *Bass v. Perrin*, 170 F.3d

1312, 1318 (11th Cir. 1999).

> The first is when a change in a prisoner's conditions of confinement is so severe
> that it essentially exceeds the sentence imposed by the court.  *See Sandin v. Conner*,
> 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek
> v. Jones*, 445 U.S. 480, 492-93, 100 S. Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980)
> (holding that a prisoner is entitled to due process prior to being transferred to a
> mental hospital.  The second is when the state has consistently given a certain
> benefit to prisoners (for instance, via statute or administrative policy), and the
> deprivation of that benefit 'imposes atypical and significant hardship on the inmate
> in relation to the ordinary incidents of prison life.' *Sandin*, 515 U.S. at 484, 115 S.
> Ct. at 2300; *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2976,
> 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time
> credits' without due process). . . .

*Id.*

The record reflects that Moore lost three months good-time credit when found guilty of the

disciplinary charge subject of this complaint.  Thus, Moore has established a liberty to which due

process attaches. *Sandin v. Conner*, 515 U.S. 472, 482-83, 115 S. Ct. 2293, 2300, 132 L.Ed.2d 418

(1995); *Wolff*, 418 U.S. at 557; *but cf. Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998)

(confinement to administrative segregation for two months was not a deprivation of

constitutionally protected liberty interest as no atypical and significant hardship beyond normal

prison life was evidenced); *Morefield v. Smith*, 404 F. App'x 443, 446 (11th Cir. 2010) (a four-

year confinement in administrative segregation, although lengthy, did not create a liberty interest

considering that the conditions of confinement were similar to those in the general population);

*Moore v. Pemberton*, 110 F.3d 22, 23 (7th Cir. 1997) (no loss of a liberty or property interest

occurred when prisoner received as part of his disciplinary punishment a two-week loss of

commissary privileges); *Walker v. Loman*, 2006 WL 3327663, at *1, *3 (M.D. Ala. 2006)

(unpublished) (the 90-day loss of store, telephone, and visitation privileges, recommended custody increase, and referral for possible free-world prosecution did not result in the deprivation of a liberty interest based on state-created right or on the Due Process Clause).

To establish his claim, Moore must now establish that he was denied due process.

> In *Wolff*, the Court set forth minimum requirements of procedural due process which should be accorded prisoners: (1) advance written notice of the claimed violation; (2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) an opportunity to call witnesses and present documentary evidence in defense, when to do so would not be unduly hazardous to institutional safety or correctional goals.

*Young v. Jones*, 37 F.3d 1457, 1459–60 (11th Cir. 1994).

It is undisputed that the victim identified in Moore's Disciplinary Report was misidentified as "Gary Robert, B/M 297332".[5] (Doc. 19 at 4). This inaccuracy, however, does not negate the due process afforded to Moore. Indeed, there is no claim by Moore that he did not receive a copy of the charges against him, nor that because of the typographical error he was unable to understand the charges against him, nor that he was unable to prepare a defense, nor that he was not guilty of the charged offense. Contrarily, the record reveals that Moore was provided written notice that he was observed holding a weapon in his hand, in the I-Dorm alleyway, on July 27, 2017, and was attempting to do bodily harm to another inmate, "Gary Robert, B/M 297332". This notice is sufficient to inform Moore of the charges against him and affords sufficient information for Moore to prepare a defense against such charges. *See Wolff*, 418 U.S. at 564. ("[W]ritten notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges

---

[5] While none of the parties involved have attempted to correctly identify the alleged victim related to the disciplinary charge at issue, an online search of the Alabama Department of Corrections database reveals that it is likely inmate Robert Gary, AIS# 292994. *See* http://www.doc.state.al.us/InmateInfo (last visited July 9, 2021).

and to enable him to marshal the facts and prepare a defense."). The record also evidences that Moore was given the opportunity to call witnesses in his defense and personally testify at the hearing. *Id*. at 566 ("[T]he inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."). Moore also received a written statement of the findings against him and the evidence relied upon by the hearing officer. *Id.* at 564–65 ("[T]here must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action.).

Accordingly, Moore was provided notice of the charges, an opportunity to call witnesses, and an opportunity to present evidence in his behalf. The record further reflects that the hearing officer's finding of guilt was based on the eyewitness account of the arresting officer, representing sufficient evidence to support the conclusion reached by the hearing officer. *See Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 105 S. Ct. 2768, 86 L.Ed.2d 356 (1985) (In order to satisfy due process, there must be "some evidence" to support the decision by the prison disciplinary board that the inmate is guilty of the alleged violation.). The record clearly demonstrates that the requirements of due process were meet, and Moore has failed to carry his burden of establishing a constitutional claim.

## IV.    CONCLUSION.

Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED** in favor of Defendants Tolliver and Peters and that this action should be **DISMISSED**.

**DONE** this the 23rd day of July 2021.

/s/ Katherine P. Nelson
**UNITED STATES MAGISTRATE JUDGE**

The instructions that follow contain important information regarding objections to the report and recommendation of the Magistrate Judge.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.